IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| John Karroll, on behalf of himself and all others similarly situated, | ) ) ) | C.A. No. 6:23-cv-00223-DCC |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **OPINION AND ORDER** |
| Car Toys, Inc. and John Does 1-10, | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

This matter is before the Court on Defendant Car Toys, Inc.'s ("Defendant Car Toys") Motions to Dismiss Plaintiff's Amended Complaint and for Summary Judgment. ECF No. 24, 36. Plaintiff filed Responses in Opposition, and Defendant Car Toys filed Replies. ECF Nos. 27, 34, 37, 38. For the reasons set forth below, the Motion to Dismiss is granted in part and denied in part, and the Motion for Summary Judgment is denied as moot.

## BACKGROUND

This case arises from the termination of approximately 1,800 employees, including Plaintiff, by Wireless Advocates, LLC ("Wireless Advocates") on December 5, 2022.[1] ECF No. 32 at 5. Defendant Car Toys jointly maintained, owned, and operated multiple kiosks throughout the United States with its sister company, Wireless Advocates. *Id.* at 2. In July 2022, Costco Wholesale Corporation ("Costco") allegedly informed the former

---

[1] As the Court is turning to the Motion to Dismiss first, the recitation of facts is taken from the Amended Complaint.

CEO of Wireless Advocates and current CEO, at the time of the filing of the Amended Complaint, Daniel Brettler ("Brettler"), that it intended to terminate a contract with Wireless Advocates designating Costco as the authorized vendor for wireless phone and rate plan sales for Wireless Advocates. *Id.* Costco did not provide written notice, despite it allegedly agreeing to do so. *Id.* U.S. Bank[2] provided a line of credit to Wireless Advocates totaling $30 million, and Brettler was a guarantor of the line of credit. *Id.* at 3. Brettler was allegedly concerned that U.S. Bank could issue an event of default based upon Costco's informal notice of its decision to terminate the contract with Wireless Advocates. *Id.* On December 1, 2022, Brettler executed loan documents with U.S. Bank on behalf of himself and Wireless Advocates that terminated a line of credit provided by U.S. Bank and discharged Brettler's guarantee of the line of credit. *Id.* at 4. On December 4, 2022, U.S. Bank acknowledged that the line credit had been terminated, thus discharging Brettler's guarantee. *Id.* On December 5, 2022, Defendant Car Toys announced that it would close its headquarters shared with Wireless Advocates located in Seattle, Washington. *Id.* at 2, 4. Defendant Car Toys also announced that all 76 employees located at its headquarters would be terminated on February 6, 2023, but the employees were terminated early on January 13, 2023. *Id.* at 4. 1,800 Wireless Advocates employees, including Plaintiff, were notified that they were terminated immediately on December 5, 2022. *Id.* at 5.

Wireless Advocates assigned Plaintiff to the kiosk located in Greenville, South Carolina. *Id.* at 7. The kiosk was located in the region created by Wireless Advocates

---

[2] While it is unclear from the pleadings, the parties appear to be referring to U.S. Bancorp when "U.S. Bank" is mentioned.

2

known as "NEF," which was part of the larger Northeast region. *Id.* at 7, 9. Wireless Advocates allegedly had a company practice of requiring employees to rotate from kiosk to kiosk to cover shifts, and Plaintiff was allegedly required to cover shifts at different kiosks. *Id.* at 7. Kiosks in Region NEF also had a floater employee that Wireless Advocates allegedly expected to be available as needed to cover absences at multiple kiosks. *Id.*

On January 17, 2023, Plaintiff filed a Complaint, asserting a cause of action for a violation of the Federal Worker Adjustment and Retraining Notification ("WARN") Act, and on March 24, 2023, Defendant Car Toys filed a Motion to Dismiss for Failure to State a Claim. ECF Nos. 1, 19. On August 3, 2023, Defendant Car Toys filed a Motion for Summary Judgment. ECF No. 24. Plaintiff filed a Response in Opposition on August 31, 2023, and on September 21, 2023, Defendant Car Toys filed a Reply. Plaintiff filed an Amended Complaint on September 11, 2023. ECF No. 32. On October 2, 2023, Defendant Car Toys filed a Motion to Dismiss Plaintiff's Amended Complaint. ECF No. 36. On October 13, 2023, Plaintiff filed a Response in Opposition, and on October 20, 2023, Defendant Car Toys filed a Reply. ECF Nos. 37, 38. On October 24, 2023, the Court entered a Text Order finding Plaintiff's first Motion to Dismiss moot. ECF No. 40. Accordingly, Defendant Car Toys' Motions to Dismiss Plaintiff's Amended Complaint and for Summary Judgment are now before the Court.

## APPLICABLE LAW

### *Motion to Dismiss Standard*

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Such a

motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses . . . . Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (internal quotation marks and citation omitted). In a Rule 12(b)(6) motion, the court is obligated "to assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). However, while the Court must accept the facts in the light most favorable to the nonmoving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id*.

To survive a motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the requirement of plausibility does not impose a probability requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## ANALYSIS

As an initial matter, there are several ways to state a claim under the WARN Act. The Court will first address Defendant Car Toys' argument that notice under the WARN Act is only required for "affected employees" at the "single site of employment" where the "plant closing" or "mass layoff" occurred and is not required for "affected employees" at a

separate site of employment.  *See* ECF No. 36-1 at 11–18.  The Court will then address Plaintiff's theories under which he attempts to state a violation of the WARN Act including that: (1) he is entitled to notice as an "affected employee" of the closure of Wireless Advocates' Seattle headquarters, (2) he is entitled to notice as an "affected employee" of the closure of Wireless Advocates' kiosks located in Region NEF because they can be aggregated as a "single site of employment," (3) he is entitled to notice because Wireless Advocates as a company is a "truly unusual organizational situation," and (4) he is entitled to notice because he was a "remote employee" of the Seattle headquarters.  *See* ECF No. 37 at 8–14.

## I.     Scope of "Affected Employee" as It Relates to a "Single Site of Employment"

Defendant Car Toys contends that notice under the WARN Act only pertains to the "single site of employment" where the "plant closing" or "mass layoff" occurred and where "at least 50 employees" experienced employment losses and does not pertain to separate sites of employment.  ECF No. 36-1 at 11. Consequently, it contends that notice under the WARN Act was only triggered at its headquarters in Seattle, Washington, where 75 employees were terminated and not at kiosks located elsewhere that employed approximately three employees each.  *Id.* at 12.  Further, Defendant Car Toys asserts that notice under the WARN Act does not extend to small worksites because the definition of "affected employee" under 29 U.S.C. § 2102(a)(5) is allegedly "pull[ed] . . . out of the context of the rest of the statute" by Plaintiff.  *Id.* at 13.  Defendant Car Toys relies, in part, on *Meson v. GATX Technology Services Corp.*, 507 F.3d 803 (4th Cir. 2007), in which the Fourth Circuit Court of Appeals noted that "an employee who had a fixed workplace where fewer than fifty individuals suffered an employment loss would seem, on the face

of the statute, outside of the protections of the WARN Act." *Id.* (citing *Meson*, 507 F.3d at 808).

In contrast, Plaintiff argues that "affected employee" is not as limited as Defendant Car Toys suggests. ECF No. 37 at 2. He urges that "so long as an employee can show he or she suffered an employment loss as a consequence of a proposed plant closing or mass layoff, he or she is entitled to notice." *Id.* Further, Plaintiff asserts that *Meson* fails to address how "affected employee" should be interpreted, *id.* at 6, and requests that the Court rely on other cited cases, *see id.* at 3–5.

In reply, Defendant Car Toys responds that "affected employee" under 29 U.S.C. § 2101(a)(5) should be limited to a "single site of employment" because "affected employee" is defined as "employees who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by their employer[,]" ECF No. 38 at 1 (citing 29 U.S.C. § 2101(a)(5)), and both "plant closing" and "mass layoff" include "single site of employment" in their definitions, *id.* at 1–2 (citing 29 U.S.C. § 2101(a)(2)–(3)).

Having reviewed the arguments and submissions of the parties, the Court denies Defendant Car Toys' Motion to Dismiss on the basis that "affected employee" under 29 § U.S.C. § 2101(a)(5) is limited to a "single site of employment." "Under the WARN Act, a statutory employer must give 'affected employees' 60 days['] notice before a 'mass layoff' or a 'plant closing' when it affects at least 33% of the employees and involves at least 50 employees." *Smith v. Consolidation Coal Company/Island Creek Coal Co.*, 948 F. Supp. 583, 585 (W.D. Va. 1996) (citing 29 U.S.C. § 2102(a)).

> [T]he WARN Act lays out *two* prerequisites for an employer's obligation to give notice of impending employment decisions

6

> to particular employees. . . . the *second* is that the employees
> considered for notice must be "employees who may
> reasonably be expected to experience an employment loss *as
> a consequence of a proposed plant closing or mass layoff*.
> Thus, once a plant closing is identified . . . the 60 days' notice
> must be given to all employees *affected* by the closing.  It is
> this causal connection between the plant closing and the laid-
> off employees . . . that serves to define the class of employees
> to whom notice is due.

*United Mine Workers of America v. Martinka Coal Co.*, 202 F.3d 717, 723 (4th Cir. 2000)

(citations omitted).

Here, Fourth Circuit case law allows for an "affected employee" to state a claim for

a violation of the WARN Act so long as the employee "experience[s] an employment loss

as a consequence of a proposed plant closing or mass layoff by their employer."  *United*

*Mine Workers of America*, 202 F.3d at 723; 29 U.S.C. § 2101(a)(5).  Such language does

not limit "affected employee" to the "single site of employment" where the "plant closing"

or "mass layoff" occurred.  To the extent Defendant Car Toys relies on *Meson*, *Meson* did

not address the definition of "affected employee" and primarily involved whether 20 C.F.R.

§ 639.3(i)(6) covered the plaintiff as a "remote employee."  *Meson*, 507 F.3d at 809.

Accordingly, Defendant Car Toys' Motion to Dismiss is denied on the basis that an

"affected employee" under 29 § U.S.C. § 2101(a)(5) is limited to a "single site of

employment."

## II.   Plaintiff's Status as an "Affected Employee" of the "Plant Closure"

The Court will now address Plaintiff's theory that he is entitled to notice under the

WARN Act because he was an "affected employee" of a "plant closing," i.e. the closure

of Wireless Advocates' Seattle headquarters.  ECF No. 32 at 6.  In its Motion to Dismiss

Plaintiff's Amended Complaint, Defendant Car Toys contends that Plaintiff fails to

7

plausibly allege sufficient facts that he is an "affected employee" under 29 U.S.C. § 2101(a)(5) because Plaintiff's termination was not "a consequence of" the closure of Wireless Advocates' Seattle headquarters. ECF No. 36-1 at 18. It argues that "it is not enough that the Seattle closure and the South Carolina kiosk terminations were related to each other, announced at the same time, and shared a common cause[,]" *id.* at 19, and that 29 U.S.C. § 2101(a)(5) requires that the "plant closing" or "mass layoff" cause the affected employee's employment loss. *Id.*

Defendant Car Toys further argues that Plaintiff fails to plausibly plead the necessary causation. *Id.* Specifically, it asserts that (1) "the timing alleged in the Amended Complaint does not support that a closure of the Seattle headquarters caused the terminations at the kiosks"; and (2) the "allegations [in the Amended Complaint] do not provide any plausible basis for concluding that there was a separate decision to close the headquarters that then caused a decision to close the sales kiosks." *Id.* at 19–20. Defendant Car Toys argues that Plaintiff's allegation that "Brettler's decision to close the headquarters . . . caused the closure of the sales kiosks" is conclusory and contradicted by Plaintiff's other allegation that Brettler's liability-avoidance plan caused the closure of Wireless Advocates. *Id.* at 20. Defendant Car Toys relies, in part, on Brettler's Declaration in which he stated that "it was the closure of the sales kiosks that caused the closure of the entire Wireless Advocates business." *Id.*

Lastly, Defendant Car Toys contends that Plaintiff's allegation that in a telephone conference call on December 5, 2022, Brettler informed Plaintiff and other employees that "they were terminated immediately as a result of Wireless Advocates' proposed closure of its headquarters" is both ambiguous and conclusory and should be disregarded

by this Court. *Id.* at 21–22. Moreover, Defendant Car Toys contends that this allegation brings the contents of the telephone conference call before the Court and requests that the Court consider the contents of the call. *Id.* at 22. As a result, it asserts that in Brettler's Declaration, he disputes making any admission that Wireless Advocates' employees were terminated as a result of the proposed closure of the Seattle headquarters. *Id.*

In contrast, Plaintiff contends that, in his Declaration, Brettler "acknowledged a causal relationship . . . between the closure of the sales kiosks and the closure of the headquarters." ECF No. 37 at 9. Given the alleged acknowledgment, Plaintiff asserts that it is by itself sufficient to refute Defendant Car Toys' argument that a common cause closed the Seattle headquarters and kiosks. *Id.* Further, Plaintiff argues that he plausibly alleges that "the closure of the headquarters necessitated that all employees who worked at other sites would suffer an employment loss[,]" *id.* at 9–10, and such an allegation is not conclusory. *Id.* at 10. With respect to Plaintiff's allegation that Wireless Advocates' employees "were notified they were terminated immediately as a result of Wireless Advocates' proposed closure of its headquarters or principal place of business in Seattle[,]" Plaintiff contends that the allegation is unambiguous and must be accepted as true. *Id.*

In reply, Defendant Car Toys argues that Plaintiff's allegation that Brettler "acknowledged a causal relationship . . . between the closure of the sales kiosks and the closure of the headquarters" omits that Plaintiff alleges that the acknowledgment occurred "[i]n a Declaration filed in this Court on August 3, 2023." ECF No. 38 at 5. It asserts that Plaintiff's allegation "does not support a plausible claim that a separate decision to close the headquarters caused the sales kiosks to be closed" because in Brettler's Declaration,

9

he "states that either the sales kiosk closures caused the headquarters closure, or the closure of the sales kiosks was the common cause of the entire business." *Id.* In addition, Defendant Car Toys contends that Plaintiff's allegation that Brettler initiated a wind-down of Wireless Advocates to avoid personal liability only supports a conclusion that a single, common cause resulted in the closure of Wireless Advocates. *Id.* at 5–6.

Having reviewed the arguments and submissions of the parties, the Court grants the Motion to Dismiss as to Plaintiff's allegation that he experienced an employment loss as a consequence of the closure of Wireless Advocates' Seattle headquarters. *See United Mine Workers of America*, 202 F.3d at 723 (stating that "[i]t is this causal connection between the plant closing and the laid-off employees . . . that serves to define the class of employees to whom notice is due").

Here, Plaintiff fails to sufficiently allege that Plaintiff constitutes an affected employee under 29 U.S.C. § 2101(a)(5). As a threshold matter, in assessing Defendant Car Toys' Motion to Dismiss, the Court will not only consider the Amended Complaint but also Brettler's Declaration because "[a court] also consider[s] documents that are explicitly incorporated into the complaint by reference, and those attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citations omitted). Further, "[a court] may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.*

To be an affected employee under 29 U.S.C. § 2101(a)(5), employees must "reasonably be expected to experience an employment loss as a consequence of a

proposed plant closing or mass layoff by their employer." *Id.* In the Fourth Circuit, "the class of employees to whom notice is due" is defined by the "*causal connection* between the plant closing and the laid-off employees[.]" *United Mine Workers of America*, 202 F.3d at 723 (emphasis added). In Plaintiff's Amended Complaint, he alleges that Brettler initiated a wind-down of Wireless Advocates to avoid personal liability on a line of credit. *See* ECF No. 32 at 4 (stating that "U.S. Bank acknowledged termination of the U.S. Bank Line of Credit on December 4, 2022, which served to discharge Brettler's personal guarantee" and that on "the following day . . . Defendant announced that it would shutter its headquarters and all employees who worked there"). Plaintiff fails to sufficiently allege that he experienced an employment loss as a result of the closure of the Seattle headquarters rather than both events—termination at the headquarters and kiosks—occurring as a result of Brettler's decision to wind-down Wireless Advocates.

While Plaintiff contends that on December 5, 2022, approximately 1,800 Wireless Advocates employees "were notified they were terminated immediately as a result of [Wireless Advocates'] proposed closure of its headquarters or principal place of business in Seattle[,]" ECF No. 32 at 5, the allegation contradicts Plaintiff's assertion that Brettler started to wind-down the business to avoid liability, *see id.* at 4. Further, in Brettler's Declaration, he denies that he informed employees they were being terminated because of the closure of Wireless Advocates' headquarters in Seattle. ECF No. 24-3 at 6 (stating that "[a]t no point during the Conference Call with the sales kiosk employees did I ever refer to the Wireless Advocates Seattle headquarters"); *see Goines*, 822 F.3d at 167 ("When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the

document, crediting the document over conflicting allegations in the complaint is proper.")
(citation omitted).

In summary, Plaintiff pleads facts that suggest Wireless Advocates terminated
Plaintiff because of the closure of the Seattle headquarters, ECF No. 32 at 5, but, in the
alternative, because Brettler initiated a wind-down of Wireless Advocates as a business
decision, *id.* at 4.  As discussed above, there must be a "causal connection between the
plant closing and the laid-off employees[.]"  *United Mine Workers of America*, 202 F.3d at
723.  Plaintiff fails to plead sufficient facts stating such a connection.  Accordingly,
Defendant Car Toys' Motion to Dismiss is granted as to Plaintiff's allegation that he
experienced an employment loss as a consequence of the closure of Wireless Advocates'
Seattle headquarters.

## III.    "Single Site of Employment" Aggregation

The Court will now turn to Plaintiff's theory that he is entitled to notice under the
WARN Act because Wireless Advocates' kiosks in Region NEF may be aggregated as a
"single site of employment" under 20 C.F.R. § 639.3(i)(3).  ECF No. 32 at 6–8.  In its
Motion to Dismiss Plaintiff's Amended Complaint, Defendant Car Toys argues that
Plaintiff fails to plausibly allege sufficient facts showing that Wireless Advocates' kiosks
in Region NEF can be aggregated as a "single site of employment."  ECF No. 36-1 at 22.
As an initial matter, it asserts that separate physical locations are strongly presumed to
be separate "single site[s] of employment."  *Id.*  Further, Defendant Car Toys asserts that
Plaintiff's allegation that kiosks in Region NEF were "within reasonable geographic
proximity" of each other is conclusory, *id.* at 25, and that Plaintiff's allegations related to
Wireless Advocates rotating employees between kiosks are also conclusory and

unsupported by any allegations concerning "the number or frequency of employee moves or the number or portion of the kiosks that were involved[,]" *id.* at 26. Lastly, it contends that Plaintiff fails to plead any allegation that Wireless Advocates employees moved together with equipment between kiosks. *Id.*

In contrast, Plaintiff asserts that he sufficiently pleads facts that support aggregation of the kiosks in Region NEF to form a "single site of employment." ECF No. 37 at 10. To support his argument, he alleges that "Wireless Advocates had issues with unmanned locations . . . that caused Wireless Advocates to implement a 'company-wide pattern or practice of requiring employees to rotate from kiosk to kiosk to cover shifts.'" *Id.* at 11. Plaintiff further alleges that he and other employees were required to rotate between kiosks to cover shifts and "that Wireless Advocates employed a 'floater' who was also required to rotate from kiosk to kiosk in [Region NEF.]" *Id.* Moreover, Plaintiff alleges that kiosks in Region NEF had "overlapping staff that report to and manage the locations" and "utilize[d] the same equipment such as the point-of-sale hardware, front-end software, and back-end software among others." *Id.* With respect to "reasonable geographic proximity," Plaintiff argues that it is supported by his allegation that employees and equipment rotated between kiosks. *Id.* Lastly, he contends that the allegations related to aggregation are not conclusory. *Id.* at 11–12.

In reply, Defendant Car Toys argues that Plaintiff's allegations that kiosks in Region NEF were "within geographic proximity[,]" that Wireless Advocates required employees to rotate between kiosks, and that kiosks in Region NEF shared overlapping staff, are conclusory because "they do nothing more than recite the elements of [Plaintiff's] aggregation claim." ECF No. 38 at 7. Further, it contends that Plaintiff's well-

pled allegations "are at least as consistent with the conclusion that the kiosks cannot be aggregated as that they can be[,]" and allegations that are "merely consistent with" a defendant's liability, are insufficient to avoid dismissal. *Id.* at 6–7.

Having reviewed the arguments and submissions of the parties, the Court grants the Motion to Dismiss as to Plaintiff's allegation that the kiosks in Region NEF may be aggregated to form a "single site of employment" under 20 C.F.R. § 639.3(i)(3). Under Department of Labor regulation 20 C.F.R. § 639.3(i)(3), "[s]eparate buildings or areas which are not directly connected or in immediate proximity may be considered a single site of employment if they are in reasonable geographic proximity, used for the same purpose, and share the same staff and equipment." *Id.* One such "example is an employer who manages a number of warehouses in an area but who regularly shifts or rotates the same employees from one building to another." *Id.* In contrast, "[n]on-contiguous sites in the same geographic area which do not share the same staff or operational purpose should not be considered a single site." 20 C.F.R. § 639.3(i)(4). "Although no bright line test exists, the plain language of the statute and regulations make clear that geographic proximity provides the touchstone in determining what constitutes a 'single site.'" *Teamsters Local Union 413 v. Driver's, Inc.*, 101 F.3d 1107, 1109 (9th Cir. 1996).

Here, Plaintiff does not sufficiently plead that Wireless Advocates' kiosks in Region NEF "are in reasonable geographic proximity, used for the same purpose,[3] and share the

---

[3] It appears that the parties do not dispute whether kiosks in Region NEF were "used for the same purpose." In his Amended Complaint, Plaintiff alleges that kiosks in Region NEF "are used for the same purpose of selling cell phones and other related merchandise and services to the public[,]" ECF No. 32 at 7, and the pleadings do not address the issue, *see* ECF Nos. 36, 37, 38.

same staff and equipment."  20 C.F.R. § 639.3(i)(3).  Plaintiff's Amended Complaint fails

to sufficiently allege that kiosks in Region NEF are in "reasonable geographic proximity"

to one another or that Plaintiff's assigned kiosk in Greenville, South Carolina is in

"reasonable geographic proximity" to other kiosks in the region.  Plaintiff's Amended

Complaint only alleges that "Wireless Advocates had . . . 604 sales kiosks before it closed"

and in a conclusory manner that "[t]he kiosks in [Region NEF] are within reasonable

geographic proximity[.]"  ECF No. 32 at 6, 8.  *See Walters v. McMahen*, 684 F.3d 435,

439 (4th Cir. 2012)  (stating that "[t]he mere recital of elements of a cause of action,

supported only by conclusory statements, is not sufficient to survive a motion made

pursuant to Rule 12(b)(6)") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also*

*Priest v. DBI Services, LLC*, C.A. No. 3:21-cv-712 (DJN), 2022 WL 4242836, at *5 (E.D.

Va. July 21, 2022) (denying a motion for default judgment, in part, because "[t]he

Amended Complaint and affidavits [did] not contain any allegations regarding how many

yards Defendant managed in Virginia, the number of employees at each yard, where such

yards were specifically located, or whether the employees were shared or rotated to

multiple yards").[4]

    With respect to whether Wireless Advocates' kiosks in Region NEF "share[d] the

same staff and equipment," Plaintiff alleges that he "was required to rotate to different

kiosks to cover shifts[,]" and kiosks in Region NEF had "overlapping staff that report[ed]

---

[4] Plaintiff also contends that he sufficiently alleges that the kiosks in Region NEF were within "reasonable geographic proximity" because he alleges that Wireless Advocates employees and equipment rotated between kiosks.  ECF No. 37 at 11. However, "reasonable geographic proximity," "used for the same purpose," and "share same staff and equipment" are separate elements for aggregation under 20 C.F.R. § 639.3(i)(3).  *See Sisney v. Trinidad Drilling, LP*, 231 F. Supp. 3d 233, 239 (W.D. Tex. 2017).

to and manage[d] the locations" and "utilize[d] the same equipment such as the point-of-sale hardware, front-end software, and back-end software among others."  ECF No. 32 at 7.  Such allegations are conclusory and fail to allege how many employees rotated between kiosks, the number of kiosks involved in the employee rotations, or whether the kiosks regularly shared equipment.  In addition, rotating employees may be insufficient for purposes of satisfying aggregation under 20 C.F.R. § 639.3(i)(3).  *See Ross v. Catalina Restaurant Group Inc.*, C.A. No. CV 15-02626 DDP (JPR), 2017 WL 11635304, at *5 (C.D. Cal. Feb. 15, 2017) (citation omitted) (stating that "[t]he primary consideration in determining whether there is adequate sharing of staff or inventory to qualify as a single site is the frequency of sharing"); *see also Rifkin v. McDonnell Douglas Corp.*, 78 F.3d 1277, 1281 (8th Cir. 1996) (stating that "[t]he evidence further alleges occasional transfer of employees and office equipment . . . and central maintenance of personnel files.  This evidence . . . does not establish the necessary connection between locations to constitute a 'single site.' There is no evidence that employees and equipment are regularly shared as opposed to occasionally transferred.").  Accordingly, Defendant Car Toys' Motion to Dismiss is granted as to Plaintiff's allegation that the kiosks in Region NEF may be aggregated to form a "single site of employment" under 20 C.F.R. § 639.3(i)(3).

## IV.    "Truly Unusual Organizational Situation"

The Court will now address Plaintiff's theory that he is entitled to notice because Wireless Advocates is a "truly unusual organizational situation" under 20 C.F.R. § 633.3(i)(8).[5]  ECF No. 32 at 8–9.  Defendant Car Toys contends that Plaintiff fails to

---

[5] Plaintiff refers to "truly unusual organizational situation" under 20 C.F.R. § 633.3(i)(8) as "truly unusual organization."  *See* ECF No. 32 at 8.  The Court will reference Plaintiff's theory as "truly unusual organizational situation" per the regulation.

plausibly allege sufficient facts that Wireless Advocates is a "truly unusual organizational situation" under 20 C.F.R. § 639.3(i)(8) because "it is entirely ordinary for a retailer to operate a chain of retail outlets at different geographic locations, and to manage them by [organizing] them into districts and regions."  ECF No. 36-1 at 27.  It further asserts that the fact that Wireless Advocates operated kiosks inside Costco locations and military bases does not support Wireless Advocates being a "truly unusual organizational situation" because kiosk location does not relate to "how the real estate was owned" or to "how the business was organized."  *Id.* at 28.

In contrast, Plaintiff argues that he sufficiently alleges that Wireless Advocates is a "truly unusual organizational situation."  ECF No. 37 at 12.  Plaintiff relies on his Amended Complaint, which states, in part, that:

> These kiosks were not separate, stand-alone, brick and mortar stores. The majority of the kiosks were located in Costco stores around the country.  Many others were located on military bases.  Upon information and belief, at least for the Costco locations, cell phones and cell phone services are still being sold from the kiosks, but they are now operated by a different company.

ECF No. 32 at 8.

In reply, Defendant Car Toys contends that rotation of employees and equipment only relates to "single site of employment" aggregation under 20 C.F.R. § 639.3(i)(3) and does not apply to a "truly unusual organizational situation" under 20 C.F.R. § 639.3(i)(8). ECF No. 38 at 7–8 (citing 20 C.F.R. § 639.3(i)(8)).

Having reviewed the arguments and submissions of the parties, the Court grants the Motion to Dismiss as to Plaintiff's allegation that Wireless Advocates is a "truly unusual organizational situation" under 20 C.F.R. § 639.3(i)(8).  Under 20 C.F.R. § 639.3(i)(8),

"[t]he term 'single site of employment' may also apply to truly unusual organizational situations where the above criteria do not reasonably apply."[6]  *Id.*

_____

[6] The "above criteria" referenced in 20 C.F.R. § 639.3(i)(8) are situations covered by 20 C.F.R. § 639.3(i)(1)–(7).

(1) A single site of employment can refer to either a single location or a group of contiguous locations.  Groups of structures which form a campus or industrial park, or separate facilities across the street from one another, may be considered a single site of employment.

(2) There may be several single sites of employment within a single building, such as an office building, if separate employers conduct activities within such a building.  For example, an office building housing 50 different businesses will contain 50 single sites of employment.  The offices of each employer will be its single site of employment.

(3) Separate buildings or areas which are not directly connected or in immediate proximity may be considered a single site of employment if they are in reasonable geographic proximity, used for the same purpose, and share the same staff and equipment.  An example is an employer who manages a number of warehouses in an area but who regularly shifts or rotates the same employees from one building to another.

(4) Non-contiguous sites in the same geographic area which do not share the same staff or operational purpose should not be considered a single site.  For example, assembly plants which are located on opposite sides of town and which are managed by a single employer are separate sites if they employ different workers.

(5) Contiguous buildings owned by the same employer which have separate management, produce different products, and have separate workforces are considered separate single sites of employment.

(6) For workers who primary duties require travel from point to point, who are outstationed, or whose primary duties involve work outside any of the employer's regular employment sites

Here, Wireless Advocates as a "truly unusual organizational situation" under 20 C.F.R. § 639.3(i)(8) is inapplicable because aggregation of "[s]eparate buildings or areas" under 20 C.F.R. § 639.3(i)(3) may apply to Wireless Advocates' kiosks located in Region NEF based on Plaintiff's Amended Complaint. *See* ECF No. 32 at 6–8. 20 C.F.R. § 639.3(i)(8) only applies if "the above criteria do not reasonable apply[,]" criteria that includes aggregation under 20 C.F.R. § 639.3(i)(3).

Moreover, even if 20 C.F.R. § 639.3(i)(8) were to apply, Plaintiff fails to allege sufficient facts that Wireless Advocates is a "truly unusual organizational situation." Plaintiff fails to allege that Wireless Advocates is structured in such a way so as to evade notice under the WARN Act. *See Sisney*, 231 F. Supp. 3d at 239 (stating that 20 C.F.R. § 639.3(i)(8) "is more accurately a safety valve to allow courts to aggregate workplaces into single sites of employment if an employer has designed their organizational structure to evade the WARN Act"). Nor does Plaintiff allege that Wireless Advocates is similar to the company in *Carpenters District Council v. Dillard Department Stores*, 15 F.3d 1275, 1290 (5th Cir. 1994), "the case which best defines [truly unusual organizational situation.]" *Rifkin*, 78 F.3d at 1281 (citing *Carpenters Dist. Council*, 15 F.3d at 1290). In *Carpenters*

---

(e.g., railroad workers, bus drivers, salespersons), the single site of employment to which they are assigned as their home base, from which their work is assigned, or to which they have report will be the single site in which they are covered for WARN purposes.

(7) Foreign sites of employment are covered under WARN. U.S. workers at such sites are counted to determine whether an employer is covered as an employer under § 639.3(a).

20 C.F.R. § 639.3(i)(1)–(7).

*District Council*, "the court held that two separate locations were a 'single site' when employees, housed together, were split off into a different building due to space considerations yet continued to perform the same functions." *Id.* There are no such allegations here.

A "truly unusual organizational situation" does not apply to Wireless Advocates because it only applies if the criteria under 20 C.F.R. § 639.3(i)(1)–(7) are inapplicable, and aggregation of "[s]eparate buildings or areas[,]" one such criteria, may apply to Wireless Advocates' kiosks in Region NEF based on Plaintiff's Amended Complaint. *See* ECF No. 32 at 6–8. Moreover, if "truly unusual organizational situation" applied to Wireless Advocates, Plaintiff fails to allege sufficient facts that Wireless Advocates' organizational structure is unusual. Accordingly, Defendant Car Toys' Motion to Dismiss is granted as to Plaintiff's allegation that Wireless Advocates is a "truly unusual organizational situation" under 20 C.F.R. § 639.3(i)(8).

## V.    Plaintiff's Status as a "Remote Employee"

Finally, the Court turns to Plaintiff's theory that he is entitled to notice under the WARN Act because he is a "remote employee" of Wireless Advocates' Seattle headquarters. ECF No. 32 at 9–11. In its Motion to Dismiss Plaintiff's Amended Complaint, Defendant Car Toys contends that Plaintiff fails to plausibly plead sufficient facts that he is entitled to notice under the WARN Act because he qualifies as a "remote employee" under 20 C.F.R. § 639.3(i)(6). ECF No. 36-1 at 29. It asserts that Plaintiff fails to allege any facts that he was a "remote employee" assigned to Wireless Advocates' Seattle headquarters, *id.*, and that Plaintiff instead alleges that he was assigned to a kiosk located in Greenville, South Carolina, *id.* at 30.

In contrast, Plaintiff contends that he sufficiently alleges that he was a "remote employee" because he alleges that his "primary job duties required travel from kiosk location to kiosk location."  ECF No. 37 at 13.  He asserts that although Wireless Advocates assigned him to a kiosk in Greenville, South Carolina, his job duties required travel, and "[t]he regulation focuses on an employee's job duties[.]"  *Id.* at 14.  Moreover, he argues "that he received work from higher management or reported to higher management at Wireless Advocates whose single site of employment was the Seattle [h]eadquarters."  *Id.*

In reply, Defendant Car Toys contends that Plaintiff fails to allege that he was a "remote employee" because Plaintiff's allegation that he "was required to rotate to different kiosks to cover shifts" is conclusory.  ECF No. 38 at 9.  Further, it asserts that Plaintiff's argument that he "received work from higher management or reported to higher management," ECF No. 37 at 14, is entirely absent from the Amended Complaint as it pertains to Plaintiff, ECF No. 38 at 9–10.

Having reviewed the arguments and submissions of the parties, the Court grants the Motion to Dismiss as to Plaintiff's allegation that he is a "remote employee" pursuant to 20 C.F.R. § 639.3(i)(6).  Under 20 C.F.R. § 639.3(i)(6):

> For workers whose primary duties required travel from point to point, who are outstationed, or whose primary duties involve work outside any of the employer's regular employment sites (e.g., railroad workers, bus drivers, salespersons), the single site of employment to which they are assigned as their home base, from which their work is assigned, or to which they report will be the single site in which they are covered for WARN purposes.

*Id.*  As noted by the Fourth Circuit, "we believe [20 C.F.R. § 639.3(i)(6)] was intended to apply only to truly mobile workers without a regular, fixed place of work. . . . The terms

'travel . . . from point to point,' 'outstationed,' and 'home base,' all connote the absence of a fixed workplace." *Meson*, 507 F.3d at 809 (citations omitted).

Here, Plaintiff fails to sufficiently plead that he was a "truly mobile worker without a regular, fixed place of work." In the Amended Complaint, Plaintiff alleges that he "was required to rotate to different kiosks to cover shifts." ECF No. 32 at 7. However, Plaintiff does not allege that his *primary* duties involved traveling between kiosks. Further, under 20 C.F.R. § 639.3(i)(6), a "remote employee" must have a "single site of employment to which they are assigned as their home base, from which their work is assigned, or to which they report[.]" *Id.* Plaintiff's Amended Complaint contains no allegations that he was assigned to the Seattle headquarters, which may entitle him to notice. In fact, the portion of the Amended Complaint that sets forth allegations related to 20 C.F.R. § 639.3(i)(6) does not specifically mention Plaintiff and only references "Rusty Clark, a former District Manager of the SEK Region[,]" "other [d]istrict [m]anagers[,]" and "many other individuals[.]" ECF No. 32 at 10. Further, Plaintiff never alleges that he was a "truly mobile worker without a regular, fixed place of work" and instead alleges that Wireless Advocates assigned him to the kiosk located in Greenville, South Carolina. *Id.* at 7. Accordingly, Defendant Car Toys' Motion to Dismiss is granted as to Plaintiff's allegation that he is a "remote employee" under 20 C.F.R. § 639.3(i)(6).

## CONCLUSION

For the reasons set forth above, Defendant Car Toys' Motion to Dismiss Plaintiff's Amended Complaint [36] is **GRANTED in part and DENIED in part**, and its Motion for Summary Judgment [24] is **DENIED** as moot. Because facts may be pleaded which would allow Plaintiff to cure the deficiencies identified hereinabove, he may file a second

Amended Complaint[7] within 30 days from the date hereof should he choose to do so.

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.
United States District Judge

March 7, 2024
Spartanburg, South Carolina

---

[7] In Plaintiff's Response, he requested leave to amend the Amended Complaint. ECF No. 37 at 14. Under Federal Rule of Civil Procedure 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires." "The law is well-settled 'that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (citation omitted). The Fourth Circuit instructs that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Pittston Co. v. United States*, 199 F.3d 694, 705 (4th Cir.1999) (citation omitted). Given the procedural posture of this case, the Court cannot say that amendment would be futile. Nor is there any indication it would be prejudicial or in bad faith. Plaintiff has met the standard articulated in Rule 15.