IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

<table>
<tr><td>John Karroll, on behalf of himself<br>and all others similarly situated,</td><td>)<br>)<br>)</td><td>C.A. No. 6:23-cv-00223-DCC</td></tr>
<tr><td>Plaintiff,</td><td>)<br>)<br>)</td><td></td></tr>
<tr><td>v.</td><td>)<br>)</td><td>**OPINION AND ORDER**</td></tr>
<tr><td>Car Toys, Inc. and John Does 1-10,</td><td>)<br>)</td><td></td></tr>
<tr><td>Defendants.</td><td>)<br>)<br>)</td><td></td></tr>
</table>

This matter is before the Court on Defendant Car Toys, Inc.'s ("Defendant") Motion to Dismiss Plaintiff's Second Amended Complaint or, in the alternative, for Summary Judgment.  ECF No. 44.  For the reasons set forth below, the Defendant's Motion is granted.

## I. BACKGROUND

### A. Factual Background[1]

This case arises from the termination of approximately 1,800 employees, including Plaintiff, by Wireless Advocates, LLC ("Wireless Advocates") on December 5, 2022.  ECF No. 43 at 1, 5.  Defendant jointly maintained, owned, and operated multiple kiosks throughout the United States with its sister company, Wireless Advocates.  *Id.* at 2. Wireless Advocates' headquarters was maintained in Seattle, Washington, where at least

---

[1] As the Court is considering this Motion as a motion to dismiss, the recitation of facts is taken from the Second Amended Complaint.

seventy-six full-time employees worked on and prior to December 5, 2022. *Id.* Both Defendant and Wireless Advocates shared the same headquarters. *Id.*

Wireless Advocates operated hundreds of kiosks that, on average, were staffed by less than three people at any given time, and these employees were tasked with selling cell phones and cell phone services and operating and managing the physical kiosk where they were assigned. *Id.* at 6. These kiosks were open for approximately ten hours per day, seven days per week. *Id.* at 7. Due to issues with staffing, Wireless Advocates had a company-wide pattern or practice of requiring employees to rotate from kiosk to kiosk to cover shifts. *Id.* Plaintiff was frequently required to rotate to different kiosks in the geographical region referred to as Region NEF to cover shifts. *Id.* All of Plaintiff's coworkers in Region NEF were likewise frequently required to rotate to cover shifts. *Id.* at 8. Kiosks in Region NEF also had a floater employee that Wireless Advocates expected to be available as needed to cover absences at multiple kiosks. *Id.*

There were twelve kiosks located in Region NEF and all locations were, on average less than 40 miles from the nearest other location with half of the locations being less than 20 miles from the nearest other location. *Id.* at 9. Plaintiff and other employees in Region NEF were frequently required to carry office supplies and transport display phones and sim cards between kiosk locations. *Id.* These kiosks were not separate, stand-alone stores but were located in Costco stores and military bases. *Id.* at 10. Wireless Advocates also employed individuals, including district managers, whose work was assigned to them from the Seattle headquarters and whose primary job duties required travel from kiosk to kiosk. *Id.* at 11.

On December 5, 2022, Defendant announced that it would close its headquarters shared with Wireless Advocates located in Seattle, Washington. *Id.* at 2, 4. Defendant also announced that all 76 employees located at its headquarters would be terminated on February 6, 2023, but the employees were actually terminated in January 2023. *Id.* at 2–3. These employees at the Seattle headquarters included human resources personnel, payroll personnel, information technology personnel, accounting and finance personnel, merchandising personnel, customer service personnel, and supply chain personnel. *Id.* at 3–4.

On December 5, 2022—the same day employees in Seattle were notified of the closure of headquarters and their impending terminations—Plaintiff and approximately 1,800 other Wireless Advocates employees, who operated and managed Wireless Advocates' kiosks throughout the country, (hereinafter "Field Employees") were notified that they were terminated immediately.[2] *Id.* at 5. Field Employees relied on various Wireless Advocates personnel at the Seattle headquarters to perform the tasks required by their jobs. *Id.* Field Employees were not provided advance notice of their employment loss. *Id.* at 6.

**B. Procedural History**

On January 17, 2023, Plaintiff initiated this action against Defendant. ECF No. 1. Based on Wireless Advocates' alleged failure to provide notice before its mass layoff of Plaintiff and other Field Employees, Plaintiff brought a single claim against Defendant seeking relief for violation of the Federal Workers Adjustment and Retraining Notification

---

[2] Plaintiff refers to employees who worked at Wireless Advocates' kiosks as "field employees," and the Court will likewise use the term "Field Employees" to refer to these employees, which includes Plaintiff and those similarly situated to him in this action.

Act, 29 U.S.C. §§ 2101(1)(A) and (B) (the "WARN Act"), which affords protection for workers by requiring employers to provide sixty days advance notice of plant closings and mass layoffs. *Id.* at 3. On March 24, 2023, Defendant filed its initial Motion to Dismiss, and on August 3, 2023, Defendant filed its initial Motion for Summary Judgment. ECF Nos. 19, 24. On September 11, 2023, with the consent of Defendant, Plaintiff filed his First Amended Complaint. ECF No. 32. On October 2, 2023, Defendant filed a Motion to Dismiss Plaintiff's First Amended Complaint, which the Court subsequently granted in part and denied in part. ECF Nos. 36, 41.

In granting Defendant's Motion to Dismiss the First Amended Complaint, the Court found Plaintiff had failed to sufficiently allege that (1) he was an affected employee as anticipated by the WARN Act; (2) Wireless Advocates' kiosks in Region NEF constituted a "single site of employment" under the WARN Act; (3) Wireless Advocates' kiosk operations constituted a "truly unusual organization situation" under the WARN Act; or (4) Plaintiff qualified as a "remote employee" under the WARN Act. ECF No. 41 at 10–12, 14–16, 17–20, 21–23. Despite these findings, the Court granted Plaintiff's request for leave to amend his First Amended Complaint. *Id.* at 22–23. Plaintiff was instructed, if he so chose, to file a Second Amended Complaint curing the deficiencies identified by the Court within 30 days. *Id.*

On April 3, 2024, Plaintiff filed his Second Amended Complaint. ECF No. 43. On April 17, 2024, Defendant filed its Motion to Dismiss the Second Amended Complaint, or, in the alternative, a for Summary Judgment. ECF No. 44. Plaintiff responded in opposition, and Defendant replied in support. ECF Nos. 45, 46. The Motion is now ripe for review.

4

## II.  APPLICABLE LAW

### A.  Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Such a motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses . . . . Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (internal quotation marks and citation omitted). In a Rule 12(b)(6) motion, the court is obligated "to assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). However, while the Court must accept the facts in the light most favorable to the nonmoving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id*.

To survive a motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the requirement of plausibility does not impose a probability requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## III.  DISCUSSION

"[U]nder the WARN Act, a statutory employer must give 'affected employees' 60 days['] notice before a 'mass layoff' or a 'plant closing' when it affects at least 33% of the employees and involves at least 50 employees."   *Smith v. Consolidation Coal Company/Island Creek Coal Co.*, 948 F. Supp. 583, 585 (W.D. Va. 1996) (citing 29 U.S.C. § 2102(a)).  To prove that employer failed to give notice as required under the WARN Act, a plaintiff must show that a plant closing occurred within the definitions set forth in the WARN Act, which means a plaintiff must demonstrate that there are 50 employees, not including part-time employees, at a single site of employment, who suffered an employment loss.  29 U.S.C. § 2101(a)(8).  In other words,

> the employees considered for notice must be "employees who may reasonably be expected to experience an employment loss *as a consequence of a proposed plant closing or mass layoff*.  Thus, once a plant closing is identified . . . the 60 days' notice must be given to all employees *affected* by the closing.  It is this causal connection between the plant closing and the laid-off employees . . . that serves to define the class of employees to whom notice is due.

*United Mine Workers of Am. v. Martinka Coal Co.*, 202 F.3d 717, 723 (4th Cir. 2000) (citations omitted).  Fourth Circuit case law allows for an "affected employee" to state a claim for a violation of the WARN Act so long as the employee "experience[s] an employment loss as a consequence of a proposed plant closing or mass layoff by their employer."  *United Mine Workers of America*, 202 F.3d at 723; 29 U.S.C. § 2101(a)(5).

Again, Plaintiff attempts to allege entitlement to the WARN Act's notice requirement and protection based on four theories: (1) he is entitled to notice as an "affected employee" of the closure of Wireless Advocates' Seattle headquarters, (2) he is entitled to notice as an "affected employee" of the closure of Wireless Advocates' kiosks

6

located in Region NEF because they can be aggregated as a "single site of employment," (3) he is entitled to notice because Wireless Advocates as a company is a "truly unusual organizational situation," and (4) he is entitled to notice because he was a "remote employee" of the Seattle headquarters. *See* ECF No. 45 at 3–18. Defendant contends that Plaintiff's amendments as to each of these theories have not resolved the deficiencies previously identified by the Court and Plaintiff has failed to sufficiently allege a violation of the WARN Act by Defendant. *See* ECF no. 46 at 2–14. The Court addresses each of these theories in turn below.

## A. Plaintiff's Status as an "Affected Employee" of the "Plant Closure"

Plaintiff's first contends that he is entitled to notice under the WARN Act because he was an "affected employee" of a "plant closing"—specifically, the closure of Wireless Advocates' Seattle headquarters. ECF No. 45 at 3–10. The Court previously found Plaintiff had failed to sufficiently allege that he experienced an employment loss as a consequence of the closure of Wireless Advocates' Seattle headquarters because he failed to sufficiently allege that he experienced an employment loss as a result of the closure of the Seattle headquarters rather than both events—termination at the headquarters and kiosks—occurring as a result of the decision to wind-down Wireless Advocates. ECF No. 41 at 10–12. In his Second Amended Complaint, Plaintiff has removed almost all references to Daniel Brettler's ("Brettler"), the former CEO of Wireless Advocates, stated reasons for winding down Wireless Advocates and Brettler's Declaration that was submitted to the Court on August 3, 2023. *See* ECF Nos. 24-2, 32 at 2–6, 41 at 2–6. Plaintiff also added allegations concerning operations at the Seattle headquarters, the general roles of employees who reported to the Seattle headquarters,

and the general interactions between Field Employees and employees in Seattle. *Id.* Defendant contends these changes are again not enough to sufficiently plead that Plaintiff was an "affected employee" of the "plant closing" at Wireless Advocates' Seattle headquarters. ECF No. 44-1 at 2–5. The Court agrees.

As an initial matter, the Parties disagree as to whether the Court may consider Brettler's Declaration in deciding the present Motion without converting it from a motion to dismiss to a motion for summary judgment. ECF No. 44-1 at 4–5, 45 at 5–7. While, as explained further below, the Court finds Plaintiff's pleadings are insufficient with or without consideration of Brettler's Declaration, the Court determines it may consider the Declaration without converting Defendant's Motion to one for summary judgment. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). Even though matters outside the pleadings are generally not considered on a Rule 12(b)(6) motion, the Court "may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id*. Moreover, the Court "may judicially notice a fact that is not subject to reasonable dispute, provided that the fact . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015) (internal quotations and citations omitted). While the Court construes the facts as alleged in the light most favorable to Plaintiff, this does not mean the Court needs to suspend reality or shelve common sense in blind reliance on Plaintiff's selective omissions in amending his complaint. The Court has found similar omissions in amended complaints to be futile in curing deficiencies, making dismissal proper under Rule 12. *See*

*Hart v. Amazon.com, Inc.*, 6:23-cv-6754-DCC, ECF No. 63 at 5 (Jan. 16, 2025). Furthermore, Plaintiff makes no arguments disavowing the validity of the Declaration nor disputing its authenticity.  ECF No. 45 at 5–7.  Here, the Declaration would eventually re-surface during discovery and ultimately lead to the dismissal of this action for the same reasons the Court previously stated.  Thus, the Court still finds dismissal would be proper under Rule 12 based on Brettler's Declaration for the reasons set forth in its prior Order.

Even without Brettler's Declaration, Plaintiff's allegations are insufficient to plausibly plead the Field Employees were "affected employees" of the Seattle headquarters' closure.  To be an affected employee under 29 U.S.C. § 2101(a)(5), employees must "reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by their employer." *Id.*  In the Fourth Circuit, "the class of employees to whom notice is due" is defined by the "*causal connection* between the plant closing and the laid-off employees[.]" *United Mine Workers of America*, 202 F.3d at 723 (emphasis added).  Plaintiff's added allegations concerning the roles of employees at the Seattle headquarters and the general dependency of Field Employees on these operations are again insufficient to allege that Plaintiff experienced an employment loss as a result of the closure of the Seattle headquarters rather than both events—termination at the headquarters and kiosks—occurring as a result of the decision to wind-down Wireless Advocates as a whole.  Plaintiff contends that on December 5, 2022, approximately 1,800 Wireless Advocates employees "were notified they were terminated immediately as a result of [Wireless Advocates'] proposed closure of its headquarters or principal place of business in Seattle[,]" ECF No. 32 at 5, but this allegation alone is insufficient to plead causation as it is little more than a conclusory

recitation of the necessary element of causation.  *Ashcroft*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citing *Twombly*, 550 U.S. at 570)).  Likewise, Plaintiff's general allegations concerning the operations of headquarters and different headquarter personnels' interactions with the kiosks is not enough to plausibly plead a causal link between the closure of the headquarters in Seattle and Plaintiff and other Field Employees' subsequent terminations.  These allegations do nothing more than demonstrate the general operations of Wireless Advocates as a whole, which, in a common company structure, directed the company out of its headquarters. Plaintiff's vague allegations about general operational procedures and decisions made at the headquarters to run the company as whole, which would invariably impact all company employees including Field Employees, are insufficient to show that closure of the headquarters — rather than the closure of the entire company — caused the termination of him and other Field Employees.  Therefore, Plaintiff has failed to plead sufficient facts to indicate a "causal connection between the plant closing and the laid-off employees[.]"  *United Mine Workers of America*, 202 F.3d at 723.

Plaintiff's arguments concerning "bumping" as a means of overcoming his inability to plead causation are equally unpersuasive.  ECF No. 32 at 8.  Plaintiff argues that a ruling against him on causation would effectively nullify the WARN Act's notice requirement for "bumped" employees in future cases.  *Id.* at 8–9.  However, the concept of bumping is inapplicable in this case, and Plaintiff has made no factual allegations to that end.  *See* ECF No. 43.  Accordingly, Defendant Car Toys' Motion to Dismiss is

granted as to Plaintiff's allegation that he experienced an employment loss as a consequence of the closure of Wireless Advocates' Seattle headquarters.

## B. "Single Site of Employment" Aggregation

Plaintiff next argues that he is entitled to notice under the WARN Act because Wireless Advocates' kiosks in Region NEF may be aggregated as a "single site of employment" under 20 C.F.R. § 639.3(i)(3). ECF No. 45 at 10–15. To demonstrate aggregation is proper under the WARN Act, Plaintiff must sufficiently plead facts demonstrating that Wireless Advocates' kiosks in Region NEF "are in reasonable geographic proximity, used for the same purpose,[3] and share the same staff and equipment." *See* 20 C.F.R. § 639.3(i)(3). Plaintiff previously alleged that Wireless Advocates had a "company-wide pattern or practice of requiring employees to rotate from kiosk to kiosk to cover shifts" to cover unmanned kiosks; Plaintiff and other employees were required to rotate between kiosks to cover shifts; Wireless Advocates employed a "floater" who rotated from kiosk to kiosk in [Region NEF]; and kiosks in Region NEF had "overlapping staff that report[ed] to and manage[d] the locations" and "utilize[d] the same equipment such as the point-of-sale hardware, front-end software, and back-end software among others." ECF No. 32 at 7–9. The Court, in dismissing Plaintiff's First Amended Complaint, explained that Plaintiff's previously alleged facts were nothing more than recitations of the elements and conclusory. ECF No. 41 at 14–16.

As to reasonable geographic proximity, Plaintiff now alleges kiosks were grouped into regions based off of their geographical location so that employees could rotate from

---

[3] As noted previously by the Court, there appears to be no dispute between the parties that the kiosks were used for "the same purpose." *See* ECF Nos. 41 at 14 n.3, 44, 45, 46.

kiosk to kiosk to cover locations with staffing needs and that the twelve kiosk locations in Region NEF were, on average, less than 40 miles from the nearest other location with half of the locations being less than 20 miles from the nearest other location. ECF No. 43 at 8–9. Defendant contends these allegations demonstrate, at best, that a few of the locations in Region NEF are geographically close to one another, but these allegations are not enough to plausibly plead that all twelve locations were geographically close. ECF No. 44-1 at 5–6. Plaintiff contends his allegations, coupled with the allegation that employees rotated between locations, are enough to plausibly state a claim. ECF No. 45 at 12. However, as the Court pointed out in rejecting the same argument previously made by Plaintiff, "'reasonable geographic proximity,' 'used for the same purpose,' and 'share same staff and equipment' are *separate* elements for aggregation under 20 C.F.R. § 639.3(i)(3)." ECF No. 41 at 15 n.4 (citing *Sisney v. Trinidad Drilling, LP*, 231 F. Supp. 3d 233, 239 (W.D. Tex. 2017)) (emphasis added). Plaintiff's allegations still do not provide where the kiosks in Region NEF are specifically located, a deficit in pleading highlighted previously by the Court. *See* ECF No. 41 at 15 (citing *Priest v. DBI Services, LLC*, C.A. No. 3:21-cv-712 (DJN), 2022 WL 4242836, at *5 (E.D. Va. July 21, 2022)). While Plaintiff alleges some may be within 20 or 40 miles of one another, this is only enough to plausibly allege those kiosks are somewhat geographically close. It is insufficient, however, to plead that all twelve kiosks in Region NEF are geographically close to every other kiosk in Region NEF.

Even if Plaintiff sufficiently alleged the twelve kiosks in Region NEF are geographically close, he has failed to adequately plead the sharing of the same staff and equipment between these kiosks. The Court found Plaintiff's previous allegations

concerning the sharing of staff and equipment to be conclusory because he "fail[ed] to allege how many employees rotated between kiosks, the number of kiosks involved in the employee rotations, or whether the kiosks regularly shared equipment."  ECF No. 41 at 16.  The Court further explained, "rotating employees may be insufficient for purposes of satisfying aggregation under 20 C.F.R. § 639.3(i)(3)," and that the primary consideration for determining sharing was the frequency of such sharing and that occasional transfers were insufficient.  *Id*. (citing *Ross v. Catalina Restaurant Group Inc.*, C.A. No. CV 15-02626 DDP (JPR), 2017 WL 11635304, at *5 (C.D. Cal. Feb. 15, 2017); *Rifkin v. McDonnell Douglas Corp.*, 78 F.3d 1277, 1281 (8th Cir. 1996)).

Plaintiff has added new allegations to his Second Amended Complaint regarding the sharing of staff, including that thin staffing at kiosks meant that there were typically absences requiring frequent rotation of employees between kiosks for coverage, upon information and belief this type of coverage occurred at least once daily in Region NEF, and Plaintiff was frequently required to rotate to cover shifts.  ECF No. 43 at 7–8.  Defendant contends Plaintiff's new allegations "say[] nothing to indicate that each kiosk in the [Region NEF] regularly shared employees with each other kiosk in the district" and again plausibly alleges only that staff may be shared between a few kiosks rather than all twelve kiosks in Region NEF.  ECF No. 44-1 at 6–7.  Plaintiff argues his allegations are sufficient because he alleges "all" of his coworkers in Region NEF were frequently required to rotate from kiosk to kiosk and he does not limit this rotation to only two kiosks.  ECF No. 45 at 13–14.

However, Plaintiff's new allegations concerning sharing of staff have not addressed the problems previously highlighted by the Court: Plaintiff's "fail[ure] to allege

how many employees rotated between kiosks [and] the number of kiosks involved in the employee rotations." ECF No. 41 at 16. Plaintiff's general allegations that "all" employees were frequently required to rotate to "different" kiosks in Region NEF does not address the Court's concerns and is another vague and conclusory allegation concerning the sharing of staff. While true that Plaintiff is not required to give detailed factual allegations, Plaintiff's allegations must "show more than a 'sheer possibility'" and the Court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc.*, 213 F.3d at 180; *Ashcroft*, 556 U.S. at 678 (2009).

Likewise, Plaintiff's allegations concerning the sharing of equipment are also insufficiently vague and conclusory. Plaintiff adds new allegations that employees were frequently required to carry office supplies and transport display phones and sim cards between kiosk locations. ECF No. 43 at 9. Defendant argues these allegations demonstrate merely the transport of some items between locations, not "sharing the same equipment" between the kiosks and provide no indication of which kiosks or how many of the kiosks were involved. ECF No. 44-1 at 7. Thus, according to Defendant, the new allegations fail to plausibly tie each of the twelve kiosks in Region NEF together. *Id.* Plaintiff contends the equipment he alleges is shared—office supplies, display, and sim cards—were all necessary to fulfill Plaintiff's job responsibilities and that all other employees were required to carry such equipment from kiosk to kiosk is sufficient to plausibly allege equipment was rotated amongst all kiosks in Region NEF. ECF No. 45 at 14–15. The Court finds Plaintiff's allegations are insufficient to plausibly allege whether the kiosks regularly shared equipment. Indeed, Plaintiff's allegations indicate that each kiosk had its own point of sale hardware and related software and makes only conclusory

14

allegations that equipment rotated between all kiosks. The specific references to transportation of office supplies, display phones, and sim cards do not move the needle because Plaintiff's allegations fail to plausibly allege all twelve kiosks in Region NEF shared these same items.

Furthermore, Plaintiff's reliance on *Marques v. Telles Ranch, Inc.*, No. C 93-20187, 1995 WL 354852 (N.D. Cal. June 9, 1995), is equally unpersuasive. ECF No. 45 at 12. In *Marques*, the plaintiffs were a class of agricultural laborers who operated a harvesting business for defendants in Salinas, Coalinga, and Huron, California and Yuma and Tacna, Arizona. 1995 WL 354852 at *2. The operations were divided into two areas— the "Northern area," composed of Coalinga/Huron and Salinas, and the "Southern area," composed of Tacna and Yuma. *Id.* The defendants terminated their lettuce harvesting operation and the plaintiff sued for alleged violations of the WARN Act. *Id.* Plaintiff contends the Court should rely on the *Marques* court's conclusion that the Northern area constituted as a "single site of employment," because the distance between the three areas was more than double the distance at issue in this case. ECF No. 45 at 12. But, as Defendant points out, the *Marques* court was merely citing to a previous decision to find this area was a "single site of employment" and provided no rationale in the case cited by Plaintiff as to why. *See Marques*, 1995 WL 354852 at *9; ECF No. 46 at 10–11. A closer examination of the history of *Marques* reveals the *Marques* court found the Northern area to be a "single site of employment" despite the distance between the locations therein because the same employees moved between each of the three locations and used the same equipment. *Marques v. Telles Ranch, Inc.*, 867 F. Supp. 1438 (N.D. Cal. 1994), *aff'd*, 131 F.3d 1331 (9th Cir. 1997), and *aff'd in part*, 133 F.3d

927 (9th Cir. 1997). The *Marques* court offered no further rationale for why it found the locations within the Northern area to be within reasonable geographic proximity. *Id.* As the Court has stated herein and previously, there are *three separate* elements for aggregation to apply—reasonable geographic proximity, use for the same purpose, and sharing of the same staff and equipment. Unlike here, in *Marques* at least two of the three elements were demonstrated by the plaintiffs' pleadings, so the Court finds *Marques* to be factually distinct from the instant case.

Accordingly, Defendant's Motion to Dismiss is granted as to Plaintiff's allegation that the kiosks in Region NEF may be aggregated to form a "single site of employment" under 20 C.F.R. § 639.3(i)(3).

## C. "Truly Unusual Organizational Situation"

The Court will now address Plaintiff's theory that he is entitled to notice because Wireless Advocates is a "truly unusual organizational situation" under 20 C.F.R. § 633.3(i)(8). ECF No. 43 at 10–11. As the Court has explained, under 20 C.F.R. § 639.3(i)(8), "[t]he term 'single site of employment' may also apply to truly unusual organizational situations where the above criteria do not reasonably apply."[4] *Id.*

---

[4] The "above criteria" referenced in 20 C.F.R. § 639.3(i)(8) are situations covered by 20 C.F.R. § 639.3(i)(1)–(7).

(1) A single site of employment can refer to either a single location or a group of contiguous locations. Groups of structures which form a campus or industrial park, or separate facilities across the street from one another, may be considered a single site of employment.

(2) There may be several single sites of employment within a single building, such as an office building, if separate employers conduct activities within such a building. For example, an office building housing 50 different businesses will contain 50 single sites of employment. The offices of each employer will be its single site of employment.

The Court previously rejected Plaintiff's argument that the "truly unusual organizational situation" under 20 C.F.R. § 639.3(i)(8) is applicable to Wireless Advocates because aggregation of "[s]eparate buildings or areas" under 20 C.F.R. § 639.3(i)(3) may apply to Wireless Advocates' kiosks located in Region NEF based on Plaintiff's Amended Complaint. ECF No. 41 at 19–20. Plaintiff continues to make the same argument now. *See* ECF No. 43 at 6–10. But 20 C.F.R. § 639.3(i)(8) only applies if "the above criteria do not reasonably apply[,]" criteria that includes aggregation under 20 C.F.R. §

---

(3) Separate buildings or areas which are not directly connected or in immediate proximity may be considered a single site of employment if they are in reasonable geographic proximity, used for the same purpose, and share the same staff and equipment. An example is an employer who manages a number of warehouses in an area but who regularly shifts or rotates the same employees from one building to another.

(4) Non-contiguous sites in the same geographic area which do not share the same staff or operational purpose should not be considered a single site. For example, assembly plants which are located on opposite sides of town and which are managed by a single employer are separate sites if they employ different workers.

(5) Contiguous buildings owned by the same employer which have separate management, produce different products, and have separate workforces are considered separate single sites of employment.

(6) For workers who primary duties require travel from point to point, who are outstationed, or whose primary duties involve work outside any of the employer's regular employment sites (e.g., railroad workers, bus drivers, salespersons), the single site of employment to which they are assigned as their home base, from which their work is assigned, or to which they have report will be the single site in which they are covered for WARN purposes.

(7) Foreign sites of employment are covered under WARN. U.S. workers at such sites are counted to determine whether an employer is covered as an employer under § 639.3(a).

20 C.F.R. § 639.3(i)(1)–(7).

639.3(i)(3).  ECF No. 41 at 19–20.

Plaintiff now argues for the first time that in advancing theories on both an aggregation and truly unusual organization structures, he is merely pleading in the alternative as permitted by Rule 8.  ECF No. 45 at 15.  Defendant contends Plaintiff may not utilize a "truly unusual organization" argument as an alternative if his argument for aggregation fails because the "regulation prohibits the use of facts of the kind that might fall into other aspects of the single-site regulation in order to argue a situation is 'truly unusual.'"  ECF No. 46 at 12.  The Court agrees with Defendant.  As previously explained by the Court, situations where the "truly unusual organization" theory may apply is not based on the sufficiency of the party's pleading on other theories of liability under the WARN Act but whether "the above criteria do not reasonably apply."  Because one ore more of the criteria anticipated by 20 C.F.R. § 639.3(i)(1)–(7) may apply based on Plaintiff's allegations, Plaintiff may not rely on the catchall provision.

Regardless, even if 20 C.F.R. § 639.3(i)(8) were to apply, Plaintiff still fails to allege sufficient facts that Wireless Advocates is a "truly unusual organizational situation."  In amending his pleadings, Plaintiff has removed his allegations concerning Wireless Advocates' regional structure and rotation of employees between kiosks, but continues to allege facts concerning the "uniqueness" of Wireless Advocates' presence inside another company's store and absence of separate and independent workspaces.  *See* ECF No 43 at 10–11, ECF 32 at 8–9.  Plaintiff also now alleges the Field Employees working at these kiosks were "more akin to travelling salespersons" based on the frequent need for rotation.  ECF No. 43 at 10–11.  Defendant contends that employees' rotation between sites and Wireless Advocates' kiosks' location inside of other stores do not

support the conclusion that Wireless Advocates' structure was unusual. ECF No. 44-1 at 8. Defendant further argues that the kiosks' locations do not even relate to Wireless Advocates' "organizational structure." *Id.* Plaintiff argues that if the Court finds Plaintiff's allegations concerning other theories under 20 C.F.R. § 639.3(i)(1)–(7) are insufficient then such a conclusion supports the proposition that Wireless Advocates was structured in a way to evade notice under the WARN Act. ECF No. 45 at 16. Plaintiff then repeats the allegations of his Second Amended Complaint and concludes these allegations are sufficient and Defendant's failure to provide examples of similar organizations further supports that Wireless Advocates is a "truly unusual organization." ECF No. 45 at 16–17.

First, the Court is not persuaded by Plaintiff's argument that if the undersigned finds his pleadings insufficient on any and all other theories provided for under 20 C.F.R. § 639.3(i)(1)–(7), then it must be that he has sufficiently plead Wireless Advocates was structured in a way to evade notice under the WARN Act and § 639.3(i)(8)'s catchall provision should be applied. As the Court explained above, just because Plaintiff has not adequately plead another theory of liability under the WARN Act does not lead to the conclusion that "the above criteria do not reasonably apply." Even viewing the facts in the light most favorable to Plaintiff, Plaintiff still has a burden under Rule 8's pleading standard to allege "enough *facts* to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (emphasis added). If Plaintiff's argument concerning the applicability of the catchall provision of the WARN Act were to prevail, then a party bringing a WARN Act claim could simply plead § 639.3(i)(8) in the alternative without any supporting facts and skate past the motion-to-dismiss stage of litigation. This cannot be

so, and thus the Court turns to the sufficiency of Plaintiff's factual allegations.

Just as before, Plaintiff fails to allege that Wireless Advocates is structured in such a way so as to evade notice under the WARN Act. *See Sisney*, 231 F. Supp. 3d at 239 (stating that 20 C.F.R. § 639.3(i)(8) "is more accurately a safety valve to allow courts to aggregate workplaces into single sites of employment if an employer has designed their organizational structure to evade the WARN Act"). And again, Plaintiff does not allege that Wireless Advocates is similar to the company in *Carpenters District Council v. Dillard Department Stores*, 15 F.3d 1275, 1290 (5th Cir. 1994), "the case which best defines [truly unusual organizational situation.]" *Rifkin*, 78 F.3d at 1281 (citing *Carpenters Dist. Council*, 15 F.3d at 1290); *Carpenters District Council*, 15 F.3d at 1290 (holding that two separate locations were a "single site" when employees, housed together, were split off into a different building due to space considerations yet continued to perform the same functions). The only new allegation by Plaintiff concerning whether Wireless Advocates is a "truly unusual organization" is that the Field Employees working at these kiosks were "more akin to travelling salespersons." ECF No. 43 at 11. Plaintiff bases this conclusion on his factual allegations that employees had to rotate between kiosks to cover absences and make up for a thin staff. *Id.* at 10–11. But the Court has already rejected that such "rotation" makes Wireless Advocates a "truly unusual organization." ECF No. 41 at 17–20. For the foregoing reasons, the Court finds Plaintiff has failed to allege sufficient facts that Wireless Advocates' organizational structure is unusual. Accordingly, Defendant's Motion to Dismiss is granted as to Plaintiff's allegation that Wireless Advocates is a "truly unusual organizational situation" under 20 C.F.R. § 639.3(i)(8).

**D.  Plaintiff's Status as a "Remote Employee"**

Finally, the Court turns to Plaintiff's theory that he is entitled to notice under the WARN Act because he is a "remote employee" of Wireless Advocates' Seattle headquarters. ECF No. 43 at 11–12. Under 20 C.F.R. § 639.3(i)(6):

> For workers whose primary duties required travel from point to point, who are outstationed, or whose primary duties involve work outside any of the employer's regular employment sites (e.g., railroad workers, bus drivers, salespersons), the single site of employment to which they are assigned as their home base, from which their work is assigned, or to which they report will be the single site in which they are covered for WARN purposes.

*Id.* 20 C.F.R. § 639.3(i)(6) "was intended to apply only to truly mobile workers without a regular, fixed place of work." *Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803, 809 (4th Cir. 2007) (citations omitted). The Court previously found Plaintiff failed to sufficiently plead that he was a "truly mobile worker without a regular, fixed place of work" because while alleging he was required to rotate between kiosks he did not allege that his *primary* duties involved traveling between kiosks nor were there allegations that he was assigned to the Seattle headquarters. ECF No. 41 at 20–22.

In his Second Amended Complaint, Plaintiff removed references to specific individual employees as exemplars of remote workers and instead refers generally to "district managers" who work remotely and whose primary duties, as assigned to them from the Seattle headquarters, required travel. ECF No. 43 at 11–12. Plaintiff also removed any allegation that he worked primarily at the Greenville, South Carolina kiosk and added allegations that his primary job duties required travel from kiosk to kiosk to cover shifts in Region NEF, he was assigned work from Seattle, and his performance was reviewed by employees stationed in Seattle. *Id.* at 12. Defendant contends Plaintiff's amended allegations are still insufficient to plead that he was a "truly mobile worker

without a regular, fixed place of work." ECF no. 44-1 at 8–9. Rather, Defendant argues the allegations demonstrate that Plaintiff was required to physically report to one or more kiosks to sell products and services at those particular kiosks and that staff like him "reported to and managed" these kiosk locations and were required to rotate to temporarily fill absences. *Id.* at 9. Plaintiff contends he has alleged facts to plead that the primary duties of Field Employees working at kiosks required travel from point to point because of their frequent rotations to provide coverage and that because of this they were like "traveling salesmen." ECF No. 45 at 17–18.

The Court finds Plaintiff's pleadings are insufficient. The actual factual allegations concerning Plaintiff's job duties are as follows: Plaintiff is required to sell products and services to customers at whatever kiosk he is working at for the day and he was responsible for operating and managing that kiosk. ECF No. 43 at 4–5. While Plaintiff seeks to characterize his and other kiosk workers' primary duties as requiring travel, these characterizations are nothing more than legal conclusions drawn from the alleged fact that kiosk workers like Plaintiff were sometimes required to go to another kiosk to fill in for vacancies. *Id.* at 11–12. Indeed, Plaintiff's allegations concerning "travel" from kiosk to kiosk indicate that this required movement was temporary and just as a fill-in for absences caused by other employees. *Id.* at 6–8 (alleging that kiosks were typically staffed by three employees, but unmanned locations and thin staffing required "coverage" rotation in Region NEF). These allegations are not sufficient, however, to plead that kiosk workers like Plaintiff were "truly mobile workers without a regular, fixed place of work." *Meson*, 507 F.3d at 809.

**E. Plaintiff's Request for Leave to Amend**

The instant case has been actively pending for nearly two years, it is based on events that allegedly occurred over two years ago, and Plaintiff has already been granted leave to amend on multiple occasions. *See* ECF Nos. 31, 41. Defendant asked the Court not to allow Plaintiff to amend his complaint again. ECF Nos. 44-1 at 10, 46 at 14. In his response opposing the Motion to Dismiss, Plaintiff requests leave to amend should the Court find his allegations insufficient. ECF No. 45 at 18–19. Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, the Court should "freely grant leave when justice so requires." Leave to amend "should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Sciolino v. Newport News*, 480 F.3d 642, 651 (4th Cir. 2007).

Defendant's prior motions to dismiss the original complaint and amended complaint and its motion for summary judgment raised the same issues with respect to Plaintiff's pleadings. *See* ECF Nos. 19, 24, 36. While there is certainly no indication of bad faith, Plaintiff has already had two opportunities to rectify any pleading deficiencies on these issues. *See* ECF Nos. 31, 41. As outlined above, Plaintiff has not been able to cure the deficiencies in his pleading. Furthermore, Plaintiff has not provided the Court with a proposed amended complaint or set out any proposed amendments in his response brief indicating how he would cure the deficiencies in a third amendment. *See* ECF No. 45. Finally, based on Plaintiff's allegations and Defendant's responses to the same, it appears that the underlying facts are largely undisputed and have remained the same despite numerous previous amendments. A rose by any other name is still a rose, and under these circumstances, the Court finds granting Plaintiff continued repeated

attempts to reframe the same facts—especially without any indication of what new factual allegations or amendments would support his cause of action—would be futile. *Cozzarelli v. Inspire Pharmaceuticals Inc.*, 549 F.3d 618, 630 (4th Cir. 2008) ("[I]t is clear that amendment would be futile in light of the fundamental deficiencies in plaintiffs' theory of liability.") The Court additionally finds it would be prejudicial to Defendant to allow Plaintiff to amend his complaint for a third time. Accordingly, justice does not require leave to amend in this instance, and Plaintiff's request to amend is denied.

## CONCLUSION

For the reasons set forth above, Defendant Car Toys' Motion to Dismiss Plaintiff's Second Amended Complaint [44] is **GRANTED**.[5]

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.
United States District Judge

February 3, 2025
Spartanburg, South Carolina

---

[5] Plaintiff also brought this action against several fictitious parties, John Does 1–10. Generally, John Doe suits are permissible only against "real, but unidentified, defendants." *See Schiff v. Kennedy,* 691 F.2d 196, 197 (4th Cir.1982). The Fourth Circuit has recognized the district court's need to manage its docket and the danger of permitting suits with unnamed parties to remain on the docket unprosecuted. *Id.* at 198. Thus, a court can dismiss an action against unnamed parties where it does not appear their true identities are discoverable. *Id.* Here, Plaintiff has made no factual allegations against John Does 1–10 in the Second Amended Complaint. *See* ECF No. 43. Without specific facts or allegations describing these unnamed parties or supporting Plaintiff's claims against them, the Court finds their identities are not discoverable. Accordingly, the Court **DISMISSES** Plaintiff's claims against John Does 1–10 without prejudice.